Defendant has filed in this Court a motion to dismiss plaintiff's appeal on the ground that the order granting the appeal made same returnable sixty-five days after the date of the order.
[1] The appeal was lodged in this Court on March 18, 1948. The motion to dismiss was filed May 1, 1948. Motions to dismiss an appeal because of irregularities incident to the order granting same must be filed within three days from the time the appeal is lodged. Article 886, Code of Practice; Greater New Orleans Homestead Ass'n v. Korner, 11 La. App. 59, 123 So. 181; Cigali v. Kaplan, La. App., 34 So.2d 924, and cases there cited. Defendant's motion was not timely filed and it is therefore denied.
 On the Merits.
This is a compensation suit on appeal to this Court from a judgment sustaining a plea of prescription and dismissing plaintiff's suit for four hundred weeks compensation.
The plaintiff is a colored woman. Her petition, filed in July, 1947, sets forth that on January 4, 1946, and for some time prior thereto, she had been working for defendant, doing a man's work in loading lumber and doing other forms of manual labor; that on that date while moving a truck loaded with lumber, the platform on which she was working gave way; that she suffered a severe injury to her left leg and a "total and permanent" injury to her back.
The petition further set forth that after treatment by defendant's physician for two or three weeks, she was dismissed by him and told to resume work, and that notwithstanding intense and constant pain, she went back to work on February 4, 1946; that she was given lighter work by the company at the same rate of pay, until August 3, 1946, when the condition of her back became so bad and the pain so unbearable that she was compelled to stop all work.
The fifth paragraph of the petition anticipated the plea of prescription and provides as follows:
"That in order to negative a plea of one year's prescription from the date of the injury in bar of her rights to recover which may be interposed, she shows that the prescriptive period was interrupted when her employer put her back to work in February, following her injury January 4, 1946, and at the same rate of pay while doing lighter work, and did not begin to run until August 3, 1946, the day she stopped working, under the provisions of Section 31 of Act 20 of 1914, as amended by Act 29 of 1934, as interpreted by the Appellate Courts of Louisiana."
As anticipated by plaintiff, defendant's first act was to file a plea of prescription, setting forth that more than a year had elapsed between the date of injury, January 4, 1946, and July 26, 1947, the date on which suit was filed; that more than one year had elapsed since any payments had been made to plaintiff as compensation; that at no time was there any agreement to pay further compensation, and denying that plaintiff was ever given any employment or wages in lieu of compensation.
Trial was had on the plea of prescription, at the conclusion of which the learned District Judge gave judgment in favor of defendant.
The testimony shows that plaintiff's regular job at the time of the injury was that of lumber checker; that she began her work with the defendant company in 1944 and worked for some months as a laborer in handling lumber but "worked up" to a position of lumber checker, which required no heavy labor. The mill was a small one and from time to time she was called upon — as necessity and convenience dictated — to perform heavier labor. On the afternoon of the accident, the operation which included the checking of the lumber was "shut *Page 612 
down." Plaintiff and a fellow employee were told to unload some lumber and "call it a day." It was while engaged in this unloading operation that she was injured. She testified that after the injury she returned to her job as checker and was not called upon to do heavy work.
The accident occurred January 4, 1946. She returned to work in February, 1946. She made no demand for compensation until well past the prescriptive period. She left the employ of defendant on August 3, 1946, of her own accord. Suit was filed in July, 1947.
[2] Plaintiff's contention before this Court is that the payment of wages for services rendered up to and including August 3, 1946, constituted an interruption of prescription and that therefore the suit was timely filed on July 22, 1947, citing in support of this contention the cases of Carpenter v. E. I. DuPont DeNemours Co., La. App., 194 So. 99; Esthey v. Avondale Marine Ways, Inc., La. App., 25 So.2d 631, and Carlino v. United States Fidelity Guaranty Co., 196 La. 400,199 So. 228.
In the Carpenter case, plaintiff, who was injured on July 21, 1937, soon returned to work at the same wages but at lighter duties. Soon afterwards, Carpenter discovered that his injury had resulted in a hernia. He requested his employer to arrange for an examination. The employer insisted that he would get completely well in natural course and continued to provide him with relatively light work, assuring Carpenter repeatedly that he would be taken care of and given work and that ultimately, if he did not get well, he would be taken care of to his full satisfaction. The Court held that when an employer, withknowledge of employee's disabling injury, continues to pay him wages for performing lighter services than those done before injury, "there results a situation in which the provisions of the statute regarding the bar of peremption have been fully satisfied and as long as those payments continue prescription does not run." [194 So. 101.]
Zealous counsel for plaintiff contends in brief that the doctrine of the Carpenter case is applicable in that the defendant "took this claimant off of the heavy duties which she was performing at the time of her injury, with full knowledgeof her crippled condition and kept her employed at lighter duties of checking, grading and stencilling lumber." (Italics ours.)
Unfortunately for counsel's contention, the facts are different from those of the Carpenter case. Claimant's regular duties both before and after the injury were those of "lumber checker," with occasional calls or assignments to various routine heavier mill work. The most favorable interpretation of the testimony would be that she was called upon less for heavy work after the accident than before. Moreover, the record shows that after the alleged injury, she voluntarily undertook for extra pay, the heavier work of giving the mill office a sort of spring house cleaning during hours which would normally be off duty.
A further distinguishing feature of the case before us from the Carpenter case is that Carpenter's light employment continued past the prescriptive date, while Mable Walker quit the employ of defendant on August 3, 1946, while there yet remained more than five months of time before the one year's prescription would accrue. There is no allegation or proof that the plaintiff made any demand for compensation or that defendant made any payment of wages to her during this time or that any action was taken by the defendant calculated to lull her into a sense of security as was true in the Carpenter case.
The other two cases cited by plaintiff's capable counsel are not applicable to the facts before us. In the Esthey case, supra, the workman was disabled by a head injury. After being paid compensation for about six weeks, he returned to work, but becoming dizzy, went home the same day. A week later he returned to work for two days; two weeks later he returned to work. Esthey's difficulty was a recurring dizziness and after working ten days more he suffered another dizzy spell, fell, and injured his left leg. He returned to work again two weeks later, but was unable to carry on. He was paid compensation for the time lost prior to the occurrence of the dizzy spell which resulted in his leg injury and paid *Page 613 
compensation for the two weeks absence from work following the dizzy spell and leg injury. Suit was filed more than twelve months after the first payments, but within twelve months of the last payments. The Court found that after the leg injury, the injured employee was treated for the head condition as well as the hurt to his leg and that his leg trouble was but an incident to the dizzy spell caused by the first accident, and that therefore the compensation payments made for the last two weeks constituted an interruption of prescription for the claim under the original injury.
The Carlino case, the third of the three cited by present plaintiff is not applicable here. The plaintiff in that case suffered a hernia on September 15, 1936, and after an operation returned to work in May, 1937. He continued to do light work until August 1, 1937, when the Supreme Court found he "suddenly suffered a complete rupture." [196 La. 400, 199 So. 232.] In passing on the case, the Court said:
"It is not necessary to decide whether the one-year term of prescription against a suit based upon the hernia which occurred on or about the 15th of September, 1936, went on while the employer was paying the injured employee his wages as a gratuity. It is sufficient to say that a suit for compensation for the disability resulting from the rupture which occurred on August 1, 1937, is not barred by prescription, because the suit was filed on June 18, 1938."
Section 31 of the Compensation Act, as amended by Act No. 29 of 1934, provides that compensation claims "shall be forever barred unless within one year after the accident or death the parties shall have agreed upon the payments to be made under this act or unless within one year after the accident proceedings have been begun as provided in sections 17 and 18 of this Act."
Plaintiff's suit was filed eighteen months after the alleged injury. Her claim that her case falls within the recognized exception to the rule is not sustained by the record.
The judgment of the District Court sustaining the plea of prescription was correct and same is hereby affirmed, with costs.