Jefferson Davis brought this suit under the Workmen's Compensation Law of Louisiana, Act No. 20 of 1914, as amended. He made defendants, Brown's Velvet Dairy Products, Inc., his employer, and New Amsterdam Casualty Company, the employer's *Page 267 
compensation insurance carrier, and he prayed for solidary judgment against the two defendants for $20 per week for 400 weeks.
He filed the suit on January 31, 1949, and alleged that he had sustained injury as the result of an accident which had occurred June 10, 1946.
Realizing that since the suit was not filed until more than two and one-half years after the occurrence of the accident, the defendants would plead the prescriptions or peremptions of one year and of two years which are provided by the compensation law, as amended, plaintiff made certain allegations in an effort to show that there had been an interruption of prescription. He averred that he had been sent "to the company doctors at the time of his injury * * *." He also averred that though he had "never received any compensation at all * * *, he understood at all times that he was being taken care of by his employer * * *" and "on various occasions he was told by various officials of his employer that he would be taken care of by his employer and given compensation for his injuries."
He also alleged that he is "an uneducated negro man * * *" and "that he was never at all suspicious that the people he talked to did not mean what they said, and that by their assurances he was lulled into a sense of security and did nothing to legally protect his rights."
Defendant pleaded the prescriptions of one and two years and filed an exception of no right and no cause of action and an exception of vagueness. The pleas of prescription and the exception of no right of action and no cause of action were "referred to the merits," and the exception of vagueness was maintained and plaintiff was ordered to amend his petition so as to allege:
"(1) The date that plaintiff last worked for the defendant and ceased his employment.
"(2) Whether any wages or payments of any kind were made by defendants to plaintiff after June 10, 1946, the date of the accident.
"(3) Amend Article 7 of the petition so as to explain and detail with more clarity the allegation: '* * * but that he understood at all times that he was being taken care of by his employer * * *,' and the allegation * * * that on various occasions he was told by various officials of 'his employer that he would be taken care of by his employer and given compensation for his injuries'; particularly alleging the dates thereof."
Plaintiff then filed an amended petition in which he alleged that his last date of employment was June 10, 1946, and that "he never worked for defendant after that date in any capacity." He further alleged that he was "not paid any kind of payment after June 10, 1946, by the defendant, except that he was sent to defendant's doctors for treatment and treated until February, 1948. In compliance with the requirement that he explain in detail and with clarity the allegations concerning what various officials may have told him, he made the following allegation: "That in order to clarify Article VII of his original petition, plaintiff alleges in addition thereto, as follows: That after petitioner returned from the doctors offices on the date of his injury, he asked Mr. Brown what was going to happen, and that he was told in effect to go home and that he would receive a check to compensate him, and that at periodic intervals thereafter, of from one month to six weeks (the exact dates are beyond petitioner's recall, as is the exact number of conversations had, and who each one was with), he made further attempts to ascertain what steps were being taken for his benefit, and each time he was assured he should go home and that he would then be sent money and taken care of; that petitioner further was led to believe that a great deal depended on what was done by the doctors and what they said about his condition; and consequently his last trip to defendant's place of business was after he had been discharged by the doctors in February 1948, and he was again reassured; after he did not hear from this visit he turned the matter over to an attorney." *Page 268 
He also alleged that since filing his original petition "his eyes have gotten much worse, and that on examination, doctors say that the sight is completely gone in his right eye, and about 80% gone in his left eye * * *."
We deem it advisable at this time to dispose of the two contentions which are hinted at in the petitions, particularly in the supplemental petition. These two possible contentions are: (1) That the fact that medical services were furnished may have constituted an admission of liability, or may have delayed the running of prescription; and (2) That the full effect of the injury was not discovered until some time after the accident and that this also may have delayed the accrual of prescription.
It is, of course, clear that the fact that medical services were provided for the plaintiff did not have this effect. The statute so provides, and it has often been so held.
In Michel v. Maryland Casualty Company, La. App.,33 So.2d 144, 146, the plaintiff alleged that he had been instructed to appear for medical examination and treatment and that he had appeared. The Court said: "* * * These allegations do not show any interruption of prescription. The furnishing of medical services and payment therefor by the employer does not constitute an admission of liability for compensation under the law. Kinder v. Lake Charles Harbor and Terminal Dist. et al., La. App., 31 So.2d 498; Subsection 5 of Section 18 of Act No. 20 of 1914, as amended, Act No. 85 of 1926, § 1, Dart's Stat. § 4408."
We pass to a consideration of the effect which could be given to the allegation, if true, that though this accident occurred on June 10, 1946, the full effect of the injury had not developed even on May 4, 1949 when the supplemental petition was filed.
It is true that the statute, as amended by Act No. 29 of 1934, from which we shall later quote, provides that when the full effect of an accident is not immediately manifest, prescription does not commence to run until "the injury develops". However, that statute contains the further proviso that in any such case the claim is barred unless the proceeding is begun within two years from the occurrence of the accident. As a result of this proviso it is clear that no matter how late the effect of the injury may be discovered, in no event may the suit be brought after the expiration of two years unless it be that there has been an interruption caused by the payment of wages, the payment of compensation or in some way other than by the delay in the discovery of the effect of the injury. Typical of these cases is the case of Anderson v. Champagne, La. App.,8 So.2d 373, 374, in which the Court said:
"It is apparent that under the law as it now stands, and as it existed at the time of the filing of this suit, the prescription of one year begins to run from the date of the accident if the injury develops at the time of the accident or immediately thereafter, but where the injury develops after the accident, the prescription of one year begins to run from the time the injury manifests itself, but in no event can the suit be brought more than two years from the date of the accident."
When the amended petition was filed, defendants renewed all of the pleas and exceptions which they had originally filed, and after a hearing on these pleas and exceptions, the pleas of prescription of one and of two years were maintained and the suit was dismissed. Plaintiff has appealed.
The pleas of prescription of one year and of two years are based on the provisions of section 31 of the compensation statute, Act No. 20 of 1914, as amended by Act No. 29 of 1934, which reads as follows: "That in case of personal injury (including death resulting therefrom) all claims for payments shall be forever barred unless within one year after the accident or death the parties shall have agreed upon the payments to be made under this act or unless within one year after the accident proceedings have been begun as provided in Sections 17 and 18 of this Act. Where, however, such payments have been made in any case, said limitations shall not take effect until the expiration of one year from the time of making the last *Page 269 
payment. Also, where the injury does not result at the time of, or develop immediately after the accident, the limitations shall not take effect until the expiration of one year from the time the injury develops, but in all such cases the claim for payment shall be forever barred unless the said proceedings have been begun within two years from the date of the accident."
It is very obvious that unless there is alleged some occurrence which interrupted the course of prescription, this action is barred by both the prescription of one year and the prescription of two years, and it is plaintiff's contention that the occurrences which had that effect are recited in both his original and his supplemental petitions. He says that he was lulled into a sense of security by the action of the employer, and he maintains that there is established jurisprudence in this State to the effect that when an employer leads the employee to believe that he will ultimately be "taken care of", so long as he is lulled into that sense of security, the prescription provided by the statute does not commence to run.
Plaintiff relies principally on Carpenter v. E. I. Dupont De Nemours Co., La. App., 194 So. 99, and he says that in many other cases the doctrine which he relies upon as having been established in the Carpenter case has been considered, and that in none of them has it been disapproved. The later cases which he cites are: Anderson v. Champagne, La. App., 8 So.2d 373; Arnold v. Solvay Process Co., 207 La. 8, 20 So.2d 407; Richard v. Blair, La. App., 20 So.2d 577; Thornton v. E. I. DuPont DeNemours Co., 207 La. 239, 21 So.2d 46; Stephenson v. McCook Bros. Funeral Home, Inc., La. App., 27 So.2d 644; Esthey v. Avondale Marine Ways, La. App., 25 So.2d 631; Michel v. Maryland Casualty Co., La. App., 33 So.2d 144; Walker v. Mansfield Hardwood Lumber Co., La. App., 35 So.2d 610.
In the Carpenter case the employee who had sustained an injury "was given lighter duties to perform" and for nearly two years "was kept on the pay roll at regular wages". [194 So. 100.] He was then discharged and compensation was refused him. The Court of Appeal for the First Circuit held that because the employee had been retained in the employment and had been paid his regular wages, prescription did not commence to run, the reason being that so long as he was earning wages no compensation could be due, and so long as no compensation could be due a suit for compensation would be premature.
In Carlino v. United States Fidelity Guaranty Co.,196 La. 400, 199 So. 228, the Supreme Court held that it was not prematurity which prevented the filing of suit in such a case, but that it was the fact that so long as the employee continues to receive wages equal to or exceeding in amount the compensation claimed, a suit for compensation would be unavailing because there would be no right or cause of action. In neither the Carpenter case nor the Carlino case was it held that the prescription was interrupted by mere promises to take care of the employee.
In the Carpenter case the Court said: "* * * The law does not contemplate that a person should go through the idle formality of filing a suit which he knows would be dismissed on a plea of prematurity in order to protect his rights under his claim for compensation."
It is true that in that case the plaintiff had alleged that: "* * * his employer induced him to temporarily forego any claim for compensation payments under the law by assuring him repeatedly that he would be taken care of and given work as long as construction lasted and that ultimately, if he did not get well, he would be taken care of to his full satisfaction. * * *"
It is true that in Arnold v. Solvay Process Co., La. App.,15 So.2d 238, 239, the same Court referred to its opinion in the Carpenter case and said: "* * * the principal reason for our holding in that case that prescription had been interrupted was because the employer had lulled the employee into a false sense of security and had, in a way, misled or at least induced the employee into foregoing or withholding the prosecution of his claim for compensation, *Page 270 
and for that reason the employer could not take advantage of his conduct and plead prescription as a bar to the claim for compensation. * * *"
It is true, too, that in the latter case, Arnold v. Solvay Process Co., the Court said that: "* * * There is nothing in the petition in the present case to show that the employer did anything to induce plaintiff to refrain from having his claim adjudicated."
See, also, Arnold v. Solvay Process Co., 207 La. 8,20 So.2d 407, affirming opinion of the Court of Appeal.
This language might seem to indicate that that court is of the opinion that anything which may be said or done, which is justification for the employee's being lulled into a sense of security, may have the effect of postponing the running of prescription so long as he is justified in the belief that he will be taken care of. In the Carpenter case, however, the reason for the overruling of the plea of prescription was the fact that the employer had continued to pay wages at least equivalent to what the employee had been earning before the accident. In the Arnold case there was obviously no holding that the employee had been lulled into a sense of security because the pleas of prescription were sustained.
Many of the other cases cited on behalf of plaintiff involve the question of the two year prescription which is effective where the result of an accident does not manifest itself until later, and that is not the question with which we are at this moment concerned. Nor do we think that any of the other cases cited is authority for the view that mere words may be sufficient to lull an employee into a sense of security which justifies his failing to file suit within the prescribed time limit.
Our conclusion is that none of the cases cited and relied upon by plaintiff is authority for such a view and none of them may be relied upon as holding that mere words and promises may be sufficient to lull the employee into the sense of security which justifies his failing to present his claim in court. It must be conceded, however, that there is a faint intimation in at least two of those cases — Arnold v. Solvay Process Co., supra, and Walker v. Mansfield Hardwood Lumber Co., La. App.,35 So.2d 610, 612, that such justification may result from mere words. In the Walker case the Court said: "* * * There is no allegation or proof that the plaintiff made any demand for compensation or that defendant made any payment of wages to her during this time or that any action was taken by the defendant calculated to lull her into a sense of security as was true in the Carpenter case." However, in that case the Court obviously held that the plaintiff had not been lulled into a sense of security and sustained the plea of prescription.
We do not think it necessary that we go further into a discussion of this question and reach a definite conclusion on it for we feel that even if it be conceded that there may be cases in which promises or assurances may be sufficient, and we do not so hold, we are certain that the exact details of these various promises and assurances, and the times at which they are made, and the conditions which brought them about must be definitely alleged so that the defendant employer may be put on notice and may be prepared to produce such countervailing evidence as may be obtainable. In the two petitions which are before us, we find no allegations which can be said to be definite, or which set forth the details of the various promises and assurances.
We conclude that the allegations here are so vague and general and indefinite that no evidence whatever in support of them would be admissible, even if it be conceded that the prescription provided by the statute may be interrupted by mere verbal promises.
The pleas of prescription were properly sustained.
The judgment appealed from is affirmed at the cost of appellant.
Affirmed. *Page 271