Plaintiff instituted this suit on two separate causes of action. Her petition is as follows:
"1. That petitioner is a citizen and resident of the State of Louisiana and of the Parish of Caddo.
"2. That E.T. (Reb) Oakes, who is also a resident of Caddo Parish, Louisiana, is justly, truly and legally indebted to petitioner in the full sum of $6000.00, payable in weekly installments of $20.00 each, beginning November 15, 1937, and continuing for a period of 300 weeks for the benefit of herself and her two minor children, Thomas Irwin and Rosemary Irwin, less $147.54 paid July 23, 1938, and less the further sum of $133.19 paid September 8, 1938, and in addition to the above amount the further sum of $250.00 for medical charges, hospital bills and funeral expenses for the reasons hereinafter set forth.
"3. That during the year 1936, petitioner's husband, John J. Irwin, was seriously *Page 50 
and severely injured during the course of his employment with the said E.T. (Reb) Oakes during the month of May in what is known as the Lisbon Oil Field, in Claiborne Parish, Louisiana, where petitioner's husband was employed by the said E.T. (Reb) Oakes in the drilling of oil wells and in hauling and moving equipment thereto and therefrom and other work of a hazardous nature, at a wage of $35.00 per week.
"4. That petitioner's said husband, John J. Irwin, during the month of May, when carrying a log to a slush pit at a well in the Lisbon Oil Field, Claiborne Parish, Louisiana, being drilled by E.T. (Reb) Oakes for whom petitioner's husband was then working, slipped and fell and injured himself badly and was ruptured, thereby causing a hernia by said fall.
"5. That later on in September, 1936, petitioner's said husband, while in the course of his employment with the said E.T. (Reb) Oakes and at the same salary or wage as above, was making a trip in a truck to Houston, Texas, from the Lisbon Oil Field and while returning from Houston, near Longview, Texas, the truck accidentally turned over with petitioner's said husband and seriously and severely injured him and aggravated his old condition which had been caused by his former accident at the E.T. (Reb) Oakes' well in the Lisbon Oil Field, Claiborne Parish, Louisiana, in May 1936, which totally incapacitated petitioner's husband from further working and he lingered between life and death until November 15, 1937, when he died from said injuries and as a direct result thereof.
"6. That the said E.T. (Reb) Oakes recognized said claim of the petitioner and her minor children, but has never paid anything except payments made to Wellman's Funeral Home for petitioner on account of the death of her said husband on July 23, 1938, of $147.54 and on September 8, 1938, of $133.19 on the amount due on the funeral charges of petitioner's said husband.
"7. That the said E.T. (Reb) Oakes had and still has full knowledge and has been given due notice of said accidents and injuries of petitioner's said husband and also he has frequently promised to pay said indebtedness, but has not done so, except the amounts hereinabove stated, which payments were an acknowledgement by him of the indebtedness due petitioner and also took the claim out of the statute of limitation and interrupted the running of prescription with reference thereto.
"8. That petitioner's said husband, during the years 1936 and 1937, also worked for the said E.T. (Reb) Oakes on commission on the hauling of oil, for which he was due the petitioner's said husband at the time of his death the sum of $30,000.00, and that before her husband's death the said E.T. (Reb) Oakes has paid on said indebtedness the sum of $1600.00, leaving a balance now due petitioner of $1400.00 on that account; that since the death of petitioner's said husband and prior thereto said E.T. (Reb) Oakes acknowledged in writing that he was due petitioner and her children said amount and has falsely and fraudulently evaded paying same to petitioner but promising to do so frequently, thereby lulling petitioner into a sense of false security, and he should now be condemned to pay her said amount in addition to the amounts hereinabove alleged, together with 5% interest thereon from November 15, 1937, until paid.
"9. That petitioner has made frequent amicable demand upon the said E.T. (Reb) Oakes for payment of said indebtedness but without avail and it is now necessary that petitioner file this suit in order to be able to enforce collection thereof.
"Wherefore, petitioner prays that the said E.T. (Reb) Oakes be duly cited to appear and answer this petition and that, after due proceedings had, there be judgment in favor of petitioner on her own behalf and on behalf of her minor children, and against the said E.T. (Reb) Oakes, in the full sum of $6000.00, payable in weekly installments of $20.00 each, beginning November 15, 1937, with 5% per annum interest on each past due installment until paid; and $250.00 for medical, surgical, hospital and funeral charges, less the sum of $147.54, paid July 23, 1938, and less the further sum of $133.19, paid September 8, 1938; that the said E.T. (Reb) Oakes be further condemned to pay petitioner the additional sum of $1400.00, with 5% per annum thereon from November 15, 1937, and all costs of this suit; and petitioner further prays for all other necessary orders and decrees and for general and equitable relief."
The suit was filed on January 19, 1940, and on January 29th following, defendant filed a plea of prescription of one and two *Page 51 
years under section 4420 of Dart's Louisiana General Statutes, and Section 31 of Act No. 20 of 1914, as amended by Section 1, Act No. 85 of 1926 and Section 1 of Act No. 29 of 1934. He also filed exceptions of no cause and no right of action. The plea of prescription is leveled at the claim for compensation and the other exceptions at the claim for commissions.
Defendant also filed a plea of vagueness which was sustained below and plaintiff allowed ten days to amend and set out whether the alleged acknowledgements of indebtedness by defendant were oral or in writing and the dates when made.
Plaintiff complied with the order of court by filing a supplemental and amended petition in which she alleged:
"(a) That on date of September 20, 1937, the defendant, E.T. (Reb) Oakes, paid petitioner the sum of $1000.00 on the account he was then due petitioner's husband, John J. Irwin, who was then dangerously and critically ill from injuries which he had theretofore received while in the employ of said defendant, as fully described and set forth in plaintiff's original petitioner herein.
"(b) That on date of about October 1, 1937, the said defendant also paid the petitioner, in his room or office in the Jefferson Hotel, Shreveport, Louisiana, an additional sum of $5.00 to apply on the payment of the account originally of $3500.00 or more, due by defendant to plaintiff's said husband.
"(c) That on date of July 23, 1938, after the death of petitioner's said husband, the said defendant paid to the Wellman Funeral Home of Shreveport, Louisiana, on the account due petitioner's said husband by the defendant, the sum of $147.50, and on date of September 8, 1938, the defendant further paid the same funeral home, on the account of defendant due her said deceased husband, the sum of $133.49.
"II. Further amending and amplifying plaintiff's original petition herein, petitioner shows that on date of October 7, 1937, your petitioner's said husband, John J. Irwin, wrote and mailed to defendant a letter requesting the payment of the amount or a good portion thereof, then due by defendant to plaintiff's said husband, and stated in effect that defendant owed him $3500.00, or more, and the said defendant never denied receiving said letter or owing petitioner's said husband said amount, a copy of which letter is attached hereto and made a part hereof, marked `Exhibit A'.
"III. Further amplifying said original petition, petitioner shows that she was with her husband who was being created in a hospital in Muscatina, Iowa, for his injuries and what proved to be his final illness, during the month of October, 1937; that on October 27, 1937, petitioner wired the said defendant from Muscatina, Iowa, for money on the said account then due petitioner's said husband and, in response to that telegram the said defendant, on October 27, 1937, wired petitioner as follows:
"`Mrs. John J. Irwin
"`A Wire To Your Bank Will Give You Money Immediately. Stop I Will Take Care Of What Balance There Remains Just As Quickly As I Am Able To Have The Money Released. Suggest You Wire Mr. Teacle At First National Bank
"`E.T. Oakes.'
"The above original telegram is attached hereto and made a part hereof and marked `Exhibit B'.
"IV. Further amending and amplifying plaintiff's original petition herein, petitioner shows that, in addition to the above telegram quoted in Article III of this petition, said defendant on October 27, 1937, wrote petitioner a letter, in effect, admitting the indebtedness to petitioner's said husband, at that time, and agreeing to pay same when he could get the money, which letter is attached hereto and made a part hereof, marked `Exhibit C'.
"V. Further amending and amplifying plaintiff's original petition herein, the petitioner shows that since the death of her said husband she has frequently called upon the said defendant to pay said obligation and demanded payment thereof, and he has frequently promised orally to make payment thereof, but he has failed and neglected to do so."
Attached to the supplemental petition were the following letters and telegram:
"Shreveport, La. Oct. 7, 1937.
Mr. E.T. Oakes New Jefferson Hotel City
My dear Mr. Oakes:
As I told you yesterday, I am leaving this afternoon to go to Baker's Hospital in Muscatine, Iowa, where I hope to have *Page 52 
something done for myself. Since my accident at the well in Lisbon, I have taken treatments from very near every doctor in Shreveport, to no avail. Feeling that it is my duty to my family, I am making this trip as a last resort, to try to recover my health.
So you see, Reb, I am going to need all the cash I can put my hands on and would be most grateful if you could find it possible to pay me the wages I feel sure are due me for time put in with you.
Under our agreement, made when I started working for you at Longstreet, you guaranteed me $5.00 a day and an interest in the wells. The latter, of course, I have disposed of because the need for finances grew so pressing that I was forced to sell. Because my need at the present time is so great, I will be glad to settle for $3500.00. I am sorry to push you, Reb, but you can see how badly I need the money.
You may reach me at the Baker Hospital, Muscatine, Iowa.
Very truly yours."
"Oct. 27, 1937. Shreveport, La.
Mrs. John J. Irwin
A Wire To Your Bank Will Give You Money Immediately Stop I Will Take Care Of What Balance There Remains Just As Quickly As I Am Able To Have The Money Released Stop Suggest You Wire Mr. Teacle At First National Bank
E.T. Oakes."
"October 27, 1937.
Mrs. John J. Irwin c/o Baker Hospital Muskateen, Iowa.
Dear Mrs. Irwin:
I received your wire requesting some money and I am sure that you did not know that you could have the bank at which you have your account wire you whatever money is required for your needs.
I have not gotten the money yet where I can get any of it out for the oil from the fact that the Standard Oil Company has never furnished me a division order to show the proper disposition. I am under bond for this money and cannot use any of it until this is done.
I sent you a wire this morning and told them to charge it to my telephone and for some reason they sent the wire collect, however, it came back and I paid it, which was what I intended to do in the first place as I never sent a collect telegram in my life. It will be no trouble at all to get the money that you need. Simply send a wire to Mr. Teacle at the First Nat'l Bank and he will wire it to you at the hospital. All he needs will be the telegram from you authorizing him to do so. I sincerely hope that the treatments will help Mr. Irwin and I know of several bad cases that have been taken care of. With kindest regards, I am
Very truly yours,
(Signed) E.T. Oakes By O.E.F. (Ollie Fulton, secretary's name)."
Defendant then again filed the exceptions of no cause and no right of action and the plea of prescription of one and two years. The lower court sustained the plea of prescription as to the first demand for compensation and the exception of no cause of action to the other demand for commissions. It is from that judgment plaintiff is prosecuting this appeal.
The plea of prescription was tried on the face of the pleadings, no testimony or evidence other than the documents attached to the petition being offered. For that reason we have quoted in full the entire pleadings of plaintiff.
Section 1 of Act No. 29 of 1934 provides as follows:
"Be it enacted by the Legislature of Louisiana, That Section 31 of Act 20 of 1914 as amended and reenacted by Act 85 of 1926, be amended and re-enacted so as to read as follows:
"Section 31. That in case of personal injury (including death resulting therefrom) all claims for payments shall be forever barred unless within one year after the accident or death the parties shall have agreed upon the payments to be made under this act or unless within one year after the accident proceedings have been begun as provided in Sections 17 and 18 of this Act. Where, however, such payments have been made in any case, said limitations shall not take effect until the expiration of one year from the time of making the last payment. Also, where the injury does not result at the time of, or develop immediately after the accident, the limitations shall not take effect until the expiration of one year from the time the injury develops, but in *Page 53 
all such cases the claim for payment shall be forever barred unless the said proceedings have been begun within two years from the date of the accident."
Under this Act there must be an agreement between the interested parties upon the payments to be made within one year after the accident or death of the employee in order to interrupt the peremption of the claim. The petition alleges that the employee was first injured in May, 1936, and again in September, 1936, and that he died as the result of his injuries on November 15, 1937. She alleged that the only payments made by the defendant were for funeral expenses and were made on July 23, 1938 and September 8, 1938. Plaintiff further alleged that defendant has promised frequently to pay said indebtedness (presumably compensation). At no place in the original petition does plaintiff allege that there was ever an agreement upon payments to be made, as provided for by said above quoted Act, and no proof was offered to show that to be a fact.
In plaintiff's supplemental petition she alleged certain payments made by defendant to her deceased husband on September 20, 1937 and October 1, 1937, and reiterates the payments made to cover funeral expenses on July 23, and September 8, 1938. It is not certain whether plaintiff is claiming these different payments were made under the claim for compensation or on the account claimed as commissions due. But for the purpose of disposing of the plea of prescription, we can assume they were made as compensation payments. Suit was not filed until more than one year had elapsed since the last payment claimed by plaintiff and more than two years after the accident alleged as well as after the death of her husband and, under Act No. 29 of 1934, her claim was therefore forever barred.
The only other way the compensation claim could have been kept alive was for the deceased and defendant to have had a specific agreement on payments to have been made and payments made thereunder within a year's time before suit was filed.
The only allegation in regard to the second claim for commissions due is, "That petitioner's husband during the years 1936 and 1937 also worked for the said E.T. (Reb) Oakes on commission for the hauling of oil for which he was due petitioner's said husband at the time of his death the sum of $3000.00 and that before her husband's death the said E.T. (Reb) Oakes has paid on said indebtedness the sum of $1600.00, leaving a balance due of $1400.00 on that account."
Plaintiff further alleged that since her husband's death and prior thereto the said Oakes acknowledged in writing that he was due petitioner and her said children said amount. The telegram and letter of date October 27, 1937, sent to plaintiff by defendant admit a balance owing by defendant to plaintiff for something. It is not made plain just what the balance is owing for. The documents made no reference to the account on which plaintiff is suing.
Plaintiff's petition fails to set out a contract between defendant and her husband. She alleged defendant owed him for commissions for hauling oil. She does not allege what the rate of pay was, whether it was by the day, week, or month. She is required to allege the nature of the contract. She failed to allege how long a time her husband worked or how she arrived at the $3000 claimed to have been earned by him. Plaintiff must set forth her claim with sufficient specificness as to clearly place defendant on his guard as to what she is claiming.
Plaintiff may have a cause of action and defendant may owe her a balance that he was due her husband before his death, as is indicated by the telegram of October 27, 1937. If so, plaintiff should be able to set forth her claim as is required by law.
"A `petition' is defined to be a written document which the plaintiff addresses to a competent judge, setting forth the cause of the action which he intends to bring against the defendant, and praying to be permitted to cite that defendant before him in order that he may be ordered to do or to give a certain thing. It must contain a clear and concise statement of the object of the demand, as well as of the nature of the title, or the cause of action on which it is founded. Code of Practice, arts. 171 and 172. * * *
"Plaintiff in its petition must state his cause of action articulately, that is to say, he shall, so far as practicable, state each of the material facts upon which he bases his claim for relief in a separate paragraph. * * *" State v. American Sugar Refining Company, 138 La. 1005, 71 So. 137, 140. *Page 54 
Defendant must be apprised by the petition of every fact necessary to put him on his just defense. Plaintiff's petition failed to comply with these requirements and the exception of no cause of action was correctly sustained.
The judgment of the lower court is therefore affirmed, with costs.