The plaintiff brought this suit to recover compensation for a period of 400 weeks at the rate of $16.25 per week, less the total sum of $352.85 already paid as compensation, claiming that he is totally disabled by reason of an accident on July 11, 1944. The defendants are The White Company, Inc., and its insurance carrier, Standard Accident Insurance Company. The trial below resulted in a judgment for defendants, dismissing plaintiff's suit, and he has appealed.
It seems to be conceded that plaintiff, a colored truck driver for The White Company, was in a wreck on the above date and suffered a cerebral concussion, and he was paid compensation by the insurance carrier from the date of the accident until December 10, 1944. Plaintiff went back to work for his employer and was working for that company at the time the case was tried, receiving as much or more in wages as he was receiving at the time of the accident.
The only question presented in the case is whether or not the plaintiff still suffers from the accident to such an extent as to classify him as being totally and permanently disabled within the meaning of the Compensation Law. He claims to suffer severe headaches and pains down his back when he exercises or does hard work. He testified that he was not troubled with these headaches and back pains before the accident; that he worked 15 or 18 hours per day for two months at a time; that hard work causes his head to hurt and he suffers from "misery" in his back; also that he cannot sleep at night on account of these pains. He says that while he is working for his old employer receiving as much or more than he did before the accident, yet he has to be off a few days on account of his headaches after he has worked for two or three weeks at a time; that he works when he feels well enough to work.
Mr. White, of the White Company, testified that he kept plaintiff on the payroll and paid him his wages more on account of what he had done for him rather than what he is able to do now; that he (plaintiff) does not do nearly the work he used to do. *Page 60 
Mr. White said that he does not believe plaintiff is really earning the wages he is now paying him. He states further that plaintiff does complain quite a bit of pains and headaches.
Dr. Clovis S. Toler treated plaintiff at his clinic in Clinton after the accident. Dr. Toler testified that plaintiff stayed in his clinic 28 days suffering from a cerebral concussion resulting from the accident, and that plaintiff stayed in bed after leaving the hospital until about August 21, 1944. X-rays taken of plaintiff showed no evidence of fracture. While in the hospital, plaintiff was treated with bed rest, sedatives, ice caps, etc. The doctor stated that plaintiff suffered considerably from headaches and nausea. In a report which the doctor made on August 28, 1944, about a month and a half after the accident, he stated that the plaintiff still complained of headaches and nausea and showed signs of improvement; that he was then able to be up and about, but was not able to work at that time, and it was impossible to tell when he would be able to go back to work or whether or not he would suffer permanent disability. The doctor testified on the trial that plaintiff came to see him several times after he made the report above-mentioned and every time plaintiff came to see him, he complained of pain up and down his back and terrible headaches.
On December 9, 1944, Dr. Toler made a report to the insurance company giving a history of the treatment given plaintiff and stated in that report that the results of his treatment were good, and further stated that plaintiff was then able to return to work. On this report, the insurance company discontinued compensation payments. While Dr. Toler was on the stand testifying as a witness for plaintiff in this case on the trial which took place on January 28, 1946, more than a year after plaintiff was discharged as being able to return to work, on being asked the question: "Do you think he (plaintiff) is well now?" the doctor answered, "Clinically, I do not believe he is well." He further testified that there is no way of telling whether or not he would ever be well as the final results of a brain concussion are difficult to determine. The doctor seemed to believe that plaintiff does have these headaches and pains down his back, and is unable to account for them on any other theory other than as a result of a head injury.
On July 24, 1944, less than two weeks after the injury, Dr. Moseley examined plaintiff with Dr. Toler at the latter's request, Dr. Moseley states in his report that the chief complaint of plaintiff at that time consisted of severe headaches in the lower occipital region, the lower back part of the head. In his prognosis, Dr. Moseley stated that plaintiff may be troubled with a headache for some time, but there should be no permanent disability.
Dr. Toler sent plaintiff to Dr. C.S. Holbrook in New Orleans for examination in September, 1945, more than a year after the accident and injury. In a report made by Dr. Holbrook, he states that his examination of plaintiff revealed no evidence of an organic lesion, and the nervous system was in no way involved. He saw no evidence of any traumatic disturbance but found that he had a moderate amount of arthritis. The doctor concluded his report by making the following statement: "It is my feeling that there has been no serious damage and that Scott will get along satisfactorily. He will do better after all litigation or possible litigation has been disposed of".
From what has been said above, it is clear that Dr. Toler is in a much better position to know plaintiff's condition than the other two doctors who each examined him only one time. We are impressed with Dr. Toler's frankness and feel that he believes that the plaintiff does have these severe headaches and back pains as a result of the brain concussion. The doctor is somewhat in doubt, however, as is indicated by his testimony, and by the fact that he sent plaintiff to Dr. Holbrook, an expert in nerve complaints, more than a year after the accident and while plaintiff was still complaining of these headaches. The trial judge stated in his reasons for judgment that plaintiff had the appearance of being a normally healthy man and he evidently felt that plaintiff was able to do the type of work which he was doing at the time of the injury, and which he was doing at the time of the trial. Of course, if plaintiff *Page 61 
has the severe headaches and back pains which he claims as a result of the injury, his ability to work is impaired, and under the interpretation placed on the Compensation Law, he would be classed as permanently and totally disabled.
It appears that he had some arthritis before the accident, but there does not seem to be sufficient proof to show that this arthritic condition is the cause of his headaches and back pains.
[1, 2] We are bound to conclude from the testimony of plaintiff and that of Dr. Toler and Mr. White that plaintiff does have some trouble resulting from the accident, and he is not able to do his regular work in the usual and customary way. As has often been said, an employee does not have to be bedridden or unable to do any kind of work to be classed as totally and permanently disabled. The test is whether or not he is able to do the kind of work he is trained to do, or customarily does, in the usual and customary way, and without any serious impairment of his capacity to perform such work.
[3] The evidence shows that plaintiff has been paid wages since he went back to work for the White Company, and the defendants are entitled to credit for the total number of weeks that his wages equalled or exceeded the sum of $16.25 per week, the weekly compensation to which he is entitled. We are not able to fix the number of weeks during which such wages were paid plaintiff as the evidence on that point is not sufficiently clear. We will allow for the credit in our decree, in addition to the compensation admittedly paid. See Vega v. Higgins Industries, Inc., et al., La. App., 23 So.2d 661; Brown v. Continental Oil Co., La. App., 22 So.2d 758.
For the reasons assigned, it is ordered that the judgment appealed from be reversed and set aside, and it is now ordered that there be judgment in favor of plaintiff, Scott Fisher, and against the defendants, The White Company, Inc., and the Standard Accident Insurance Company, in solido, for compensation at the rate of $16.25 per week for a period not exceeding 400 weeks, beginning July 11, 1944, with legal interest on the past due payments, subject to a credit of $352.85 paid to cover compensation from July 11, 1944 to December 10, 1944, and subject to an additional credit for compensation due after the last mentioned date for the total number of weeks that the wages paid plaintiff, or which shall be paid to him by said Company, equal or exceed the weekly compensation of $16.25; that the defendants pay all costs of this suit.