DORE, Judge.
Clavis Cradeur, a former employee of the Louisiana Highway Commission, in Calcasieu Parish, seeks compensation based on a claim of total and permanent disability arising from a foot injury he received during the course and scope of his employment. Plaintiff started working for the Highway Commission as a laborer with road gangs in Calcausieu Parish about February, 1945. He generally unloaded sand and gravel, helped handle bridge lumber, and worked with the sign gang that put up and maintained signs and road markers. On October 10, 1946 while he was helping unload some bridge timbers one end of a timber was dropped onto the top of his foot. Although the accident caused him some pain, and according to plaintiff’s testimony his foot bothered him from that time on, plaintiff continued to work and did not then seek medical attention. Nor did he make any formal report of the accident; but his immediate supervisor apparently, as well as his fellow workers, had personal knowledge of the accident immediately or soon afterwards.
Plaintiff is an uneducated man whose command of the English language is such that at the trial he had to be questioned and his testimony taken through an interpreter. When he first consulted a physician one of his fellow workers went with him, and on a later occasion when he visited the doctor who gave him treatment he was taken to the doctor’s office by his foreman. The failure to report his accident is understandable, and of no consequence.
The first physician plaintiff saw about his foot was Dr. T. H. Hawkins, now deceased, who apparently gave him no treatment. The date of that visit was not shown. At some *602 time after the injury, however, his foot pained him so much he began limping; and on July 28, 1947 plaintiff’s superior, Wiley Myers, took him to see Dr. Harry S. Snatic. Dr. Snatic had x-rays made which showed evidence of a foreign body in the foot. On August 1, 1947 the doctor operated and removed the foreign body, which was found to be a bone-like formation about three quarters to an inch long and as big around as a match stem. It was the doctor’s opinion that this formation probably resulted either from a splinter in the flesh that disintegrated or from a blood clot caused by a mash or bruise around which a calcium deposit was subsequently formed.
The foot began to heal satisfactorily from the operation; but some time later a callus formed on the spot, which, according to Dr. Snatic, was a direct result of the operation. On two or perhaps three occasions the doctor removed the callus by either shaving or operating. From July, 1947 to May 16, 1950 plaintiff visited Dr. Snatic’s office at least seventeen times about his foot. During all this period plaintiff walked with a definite limp, had pain in his foot, and wore his shoe cut open apparently to relieve pressure on the foot.
For more than three and one-half years after the accident plaintiff continued in his same job, receiving his regular wages, performing his usual duties, and earning all the pay he received. Although his foot troubled him and he could not perform his duties without pain, no demand for compensation was made so far as the record shows. After his operation on August 1, 1947 plaintiff, according to his testimony, lost three months from work. Four four weeks of that time he was paid full wages; the payment, however, was not made as compensation but as the result of accumulated sick and annual leave to which he was entitled under employment regulations of the Highway Commission. For the balance of the three months of lost time he received no payment. On later occasions when he missed work because of his foot he usually received full pay in the form of sick leave.
On May 17, 1950 plaintiff was fired because the compensation insurance carrier advised the Highway Commission they would no longer cover plaintiff. This suit for compensation was filed, on September 14, 1950. Defendant filed pleas of prescription of one and two years, which were by consent referred to the merits, and the case went to trial on November 17, 1950. Although plaintiff’s prayer was for compensation commencing March 9, 1950, the date plaintiff was advised by Dr. Snatic to have another operation for removal of his callus, the only accident or injury mentioned in the petition or during the trial was the one suffered on October -10, 1946. Plaintiff’s only serious contention was that the payment to him of his regular wages since October, 1946 had been in the nature of compensation and had interrupted prescription. The trial court sustained the pleas of prescription and rejected plaintiff’s demands.
The question for decision here is whether prescription has run on plaintiff’s claim. If prescription was interrupted, there is little doubt but that he is entitled to compensation; then comes the question of what credits the defendant might be entitled to.
Plaintiff was a good worker and a hard worker. All the witnesses testified to that fact. One witness, who was at one time plaintiff’s foreman, stated that plaintiff was perhaps a better worker than he, the foreman, was. For over three and one-half years plaintiff performed his regular duties and earned his wages although the work caused him pain and suffering. He could not wear regular shoes, but had to have his shoe cut away from the injured foot. In spite of this there is no evidence that at any time during the period he made any demand for compensation. Perhaps he didn’t know he was in position to draw compensation; but more likely he preferred to work and draw his wages, though he could do it only with difficulty, rather than try to exist for a time on what compensation he could draw and at the same time be the cause of his own discharge by demanding compensation. He probably refrained from asking for light duty for fear that that, too, would cause him to be fired; it is un *603 likely that there were any light jobs in his department that he was qualified for.
Section 31 of the compensation statute, Act No. 20 of 1914, as amended, LSA-RS 23 :1209, contains this peremptive provision: “In case of personal injury (including death resulting therefrom) all claims for payments shall be forever barred unless within one year after the accident or death the parties have agreed upon the payments to be made under this Chapter or unless within one year after the accident proceedings have been begun as provided in Parts III and IV of this Chapter. Where such payments have been made in any case, the limitation shall not take effect until the expiration of one year from- the time of making the last payment. Also, where the injury does not result at the time of, or develop immediately after the accident, the limitation shall not take effect until the expiration of one year from the time the injury develops, but in all such cases the claim for payment shall be forever barred unless the proceedings have been begun within two years from the -date of the accident.”
In plaintiff’s brief the following cases are cited: Carlino v. U. S. Fidelity & Guaranty Co., 196 La. 400, 199 So. 228; Heard v. Receivers of Parker Gravel Co., La.App., 194 So. 142; Thornton v. E. I. DuPont De Nemours & Co., La.App., 12 So.2d 543; and Pourciau v. Board of Commissioners of Port of New Orleans, La.App., 12 So.2d 36. The Carlino case is not pertinent, for there the plaintiff suffered two separate accidents and prescription had clearly not run from the time of the second one which was actually the cause of the disability. The pronouncement in the Pourciau case was in substance like our decision in the Thornton case, but neither of those decisions is any longer authoritative on the point involved here.
In the Heard case, cited by plaintiff, the employer made ten payments to the employee while he was off from work, which the employer claimed were only donations; but the court corectly found they were intended and understood to be compensation, so that prescription ran only from the last payment. Nothing comparable to that -situation existed here. In this present case plaintiff continued to work after his accident, performing his usual and customary duties and receiving his regular pay. Plaintiff and his fellow employees who testified at the trial did not intimate that he ever asked for or was given light duty; on the other hand, he always carried his end of the load as some of them put it. There were times when he stayed off from work, due to trouble with his injured foot; and on one occasion, about nine months after his injury, he was off for three months. For four weeks of this time he was paid his full -salary, but thi-s payment, according to plaintiff’s own testimony and that of other witnesses too, was made in the form of sick leave which he had earned. For the other two months he got no pay, and there is no showing that he at any time requested compensation for that period except in thi-s -suit. On other occasions when plaintiff took off a day or two at a time he got regular pay, but again in the form of accumulated sick or annual leave.
During the course of the trial, and just before plaintiff rested, counsel for plaintiff made an oral motion and later filed a written motion for subpoena duces tecum to require defendant to produce their report on the accident and records pertaining to plaintiff’s sick leave. The motion was denied. We feel that the ruling was harmless for we fail to see how production of the records would have been of any value to plaintiff. Defendant admitted the happening and date of the accident. And plaintiff acknowledged, as other witnesses also testified, that payments to him on the occasions when he missed work were either sick leave or annual leave. The record does not indicate at any point that any of those payments were madé as, for, or in the nature of compensation.
There wa-s a period in our-jurisprudence when plaintiff might have successfully argued that his continued employment under the present facts would have had the effect of interrupting prescription on his claim. In Carpenter v. E. I. DuPont DeNemours & Co., La.App.1940, 194 So. 99, 101, this court said: “ * * * it is our confirmed opinion that when, with knowledge of the *604 employee’s disabling injury, the employer continues to pay him his usual wages, which is 35% more than the amount of compensation he would have to pay, for performing lighter services than he was doing before, there results a situation in which the provisions of the statute regarding the bar of peremption have been fully satisfied and as long as those payments continue prescription does not run. Otherwise, it is obvious that the employer could defeat every just claim for compensation for a period of more than fifty-two weeks by simply keeping the injured employee on the pay roll at a wage which is the equivalent of the amount of compensation he would be entitled to, or more, for a year and a day.”
And on that same point this court said, by way of dictum, in Thornton v. E. I. DuPont DeNemours & Co., La.App.1943, 15 So.2d 543, 545: “ * * * As long as plaintiff continued, after his injury, to receive from his employer the same salary which he was paid before, ■ as he alleges, there was no danger of his suit becoming prescribed.”
Those two quotations constitute the most liberal parts of the decisions from which they were taken and do not fully reflect what the cases actually held; they reflect, on the other hand, the equitable reasoning the court was indulging in and what the court then strongly felt was a reasonable and proper interpretation of Section 31 of the compensation act. The trend reflected there was stopped, however, when the Supreme Court reversed the Thornton case (on the plea of prematurity, which was the only question involved there) 207 La. 239, 1944, 21 So.2d 46, 52, at which time Chief Justice O’Niell commented on the Carpenter case and, after quoting, with other material, the same paragraph quoted above, said: “An employer could not defeat a just claim of an injured employee * * * by keeping his name on the payroll at regular wages for a period exceeding a year, because the employee could interrupt the running of prescription by bringing suit on his claim for workmen’s compensation at any time.”
Since then our jurisprudence on prescription has generally been to the effect that if an injured employee continues to work for the same employer, whether he does light duty or other wise, if his pay is commensurate with his services the payment of wages does not interrupt the running of prescription. See Arnold v. Solvay Process Co., 207 La. 8, 20 So.2d 407; Michel v. Maryland Casualty Co., La.App., 33 So.2d 144; D’Antoni v. Employers Liability Assurance Corp., 213 La. 67, 34 So.2d 378; Walker v. Mansfield Hardwood Lumber Co., La.App., 35 So.2d 610; Mottet v. Libby-Owens-Ford Glass Co., La.App., 49 So.2d 38; Abshire v. Cities Service Refining Corp., La.App., 50 So.2d 307.
A recent statement on the present line of decisions was given by the Supreme Court in the D’Antoni case, 34 So.2d at pages 380, 381, as follows: “The jurisprudence relative to the prosecution by injured employees of claims for further compensation, where they have returned to the service of their former employer in the ■same or a different capacity, has been settled by this court in Carlino v. United States Fidelity & Guaranty Co., 196 La. 400, 199 So. 228, and Thornton v. E. I. DuPont DeNemours & Co., 207 La. 239, 21 So.2d 46. If the' employee is actually earning the wages paid him, his suit cannot be dismissed on a plea of prematurity forasmuch as he is not receiving compensation. * * ' * Conversely, if it is shown on the trial of the plea that the wages being paid the employee are in reality a gratuity and not for the performance of work, then the action will be dismissed as premature — for, in such instance, the payment of the wage is the equivalent to the payment of compensation.”
In the Abshire case plaintiff continued in his same work at his regular pay for one year and one month after his injury and was then fired, but this court, under authority of the Supreme Court’s rulings, concluded that his compensation claim was prescribed. The discharge there had been justified on the ground that several (six) garnishment proceedings had been instituted against the employee’s wages. But the same ground for discharge had existed, to only a slightly lesser extent, before the prescriptive period had run. That case and *605 the present one illustrate vividly the happening of that which this court expressed a fear of in the Carpenter case, to-wit; how an employee’s just claim for compensation can be defeated, wilfully or otherwise.
But in view of the jurisprudence, for the reasons given herein, the judgment of the trial court sustaining defendant’s pleas of prescription is affirmed.