84 So.2d 88 (1955)
Charles SCALISE, Plaintiff and Appellant,
v.
LIBERTY MUTUAL INSURANCE COMPANY and Poplar Grove Planting & Refining Co., Inc., Defendants and Appellees.
No. 4086.
Court of Appeal of Louisiana, First Circuit.
November 22, 1955.
Rehearing Denied December 30, 1955.
*89 Sanders, Miller, Downing, Rubin & Kean, Baton Rouge, for appellant.
Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, for appellee.
TATE, Judge.
The District Court sustained a plea of prescription to plaintiff's claim for workmen's compensation. Defendants answered this appeal praying, alternatively (if the District Court is not affirmed as to the plea of prescription) that an exception of prematurity be sustained.
The present proceedings concern the effect of payment during admitted disability of full wages for lighter work, both as to prescription of the employee's claim for workmen's compensation and, also as to satisfaction of the employer's liability for workmen's compensation.
Evidence was taken on the plea of prescription. The facts are relatively undisputed. Plaintiff Scalise had been employed as a welder and general mechanic by defendant Poplar Grove Planting and Refining Company, Inc., for approximately 20 years. He sustained severe injuries to his left leg on June 30, 1949, and was hospitalized or at home and paid compensation for almost a year. He returned to work on March 23, 1950, confined to light duties but drawing the same pay as his two brothers who were likewise employed as machinists and welders. At the time of the original injury their rate of pay was 95¢ an hour; Scalise, like his co-employees, was given a raise to $1.20 per hour, subsequent to the injury. On March 18, 1951, his injury required further surgical treatment and medical attention until April 16, 1951, when he again returned to work for his employer at light duties. During this interval ending April 16, 1951, he was paid regular weekly compensation by the insurer.
It was understood at this time that a further operative procedure would be needed, but both the plaintiff-employee, his employer, and its compensation insurer and the orthopedic specialist wished for a trial period of undeterminate length at work, on the possibility that such further operative procedure might be unnecessary. Scalise continued in the employ of his employer until April 20, 1953, at which time he was taken to the Ochsner Clinic where he received the recommended second surgical procedure, since his condition failed to improve.
At this time, the compensation insurer informed Scalise and his employer that any claim either for compensation or for this additional medical treatment had perempted, *90 since over one year (in fact, over two years) had elapsed since the last compensation payment, LSA-R.S. 23:1209. Plaintiff discontinued work due to disability between April 20, 1953, and August 24, 1953, during which time he received no compensation, but existed on money loaned to him by his employer. Between the time Scalise ceased working to report for the second surgical operation and August 31, 1953, his employer negotiated on his behalf with its own compensation insurer attempting to secure agreement of the insurer to assume liability for the medical expenses of the second operation and for payment of compensation to Scalise during his disability. On this latter date the defendant insurer made a final denial of liability on the ground of peremption.
It was not until this time that plaintiff Scalise secured the assistance of an attorney, following which a claim was filed for weekly compensation "beginning at such time as this Court may fix, and continuing for the duration of disability, not to exceed 400 weeks" less credit for compensation paid, as well as for medical payments and for penalties and attorneys fees.
In an excellent and exhaustive review of the jurisprudence, the District Court concluded that no longer in effect is the rule originally announced by this Court in Carpenter v. E. I. Dupont de Nemours & Co., La.App. 1 Cir., 194 So. 99, that payment of full wages for the performance of lighter duties were to be considered payment in lieu of compensation which would suspend the accrual of prescription.
We quote from this opinion as follows:
"That the payment of wages as distinguished from compensation or payments in lieu of compensation will not interrupt the running of prescription in compensation cases now appears to be well settled as appears from the following language taken from Thornton v. E. I. Dupont de Nemours & Co., (Supreme Court) 207 La. 239, 21 So.2d 46, [52]:
"`There is no reason why the payment of wages should prevent the running or prescription against a claim for workmen's compensation * * * it is only the payment of workmen's compensation that suspends the right of an injured employee to bring suit to fix the amount of compensation to which he is entitled, and to limit the number of weeks in which it is to be paid. Of course if it is shown in any case that the payment of wages to the injured employee after the accident happened was a mere subterfuge or pretense on the part of the employer, intending thereby to lull the injured employee into a sense of security until the expiration of the year has elapsed, so that the employer might then plead prescription in bar of a suit for compensation, the payments made after the injury might well have the effect of preventing the running of prescription; otherwise an injustice would be sanctioned, * * * as explained by the court of appeal in the Carpenter case.'
"Cases involving the alleged suspension of the one year prescriptive period provided for in compensation cases because of the resumption of employment by and payment of wages to the injured employee subsequent to an accident have resulted in considerable litigation as a result of which the jurisprudence of this state appears to be well settled to the effect that if an injured employee continues to work for and receive regular wages from the same employer after injury, the prescription of one year provided for by Section 31 of Act No. 20 of 1914 as amended, LSA-R.S. 23:1209, will begin to run from the date of the accident unless it is established that the wages paid after the accident are in lieu of or in the nature of compensation, and therefore, have the legal effect of interrupting prescription. (Emphasis supplied.) Carlino v. United States Fidelity & Guaranty Co., 1940, 196 La. 400, 199 So. 228; Arnold v. Solvay Process Co., 1944, 207 La. 8, 20 So.2d 407; Thornton v. E. I. Dupont de Nemours & Company, 1944, 207 *91 La. 239, 21 So.2d 46; Michel v. Maryland Casualty Co., La.App., 1947-1948, 33 So.2d 144; D'Antoni v. Employers Liability Assurance Corporation, Ltd., 1948, 213 La. 67, 34 So.2d 378; Walker v. Mansfield Hardwood Lumber Co., La.App. 1948, 35 So.2d 610; Abshire v. Cities Service Refining Corp., La. App.1951, 50 So.2d 307; Cradeur v. Louisiana Highway Comm., La.App. 1951, 52 So.2d 601; Chauvin v. St. Mary Iron Works, La.App., 55 So.2d 617; Wallace v. Remington Rand, Inc. [La.App.], 76 So.2d 87.
"It is also well settled law that where wages paid are commensurate with services rendered there is no interruption in the prescriptive period. The following language taken from the recent case of Wallace v. Remington Rand, Inc., 76 So.2d 87, [90] is cited as authority for the foregoing principle.
"`The weight of authority in our courts is to the effect that where the employer is aware his employee is suffering from a compensable injury and retains the employee on the same job with regular wages but assigns to him the performance of lighter duties, such knowledge and action considered alone, do not bring about an interruption or suspension of the statutory bar to filing a suit within the prescribed year. This is so because there is no agreement, understanding or relationship from which it can be implied that the payments so made shall take the place of compensation. The statute, LSA-R.S. 23:1209, liberally construed requires that in order to constitute an interruption of the prescription there must at least be an implied understanding between the interested parties that the payments made to the employee shall be in lieu of compensation. Brister v. Wray-Dickinson Co., Inc., La. App., 1935, 159 So. 430 [;Id.], 183 La. 562, 164 So. 415; Irwin v. Oakes, La. App., 1942, 6 So.2d 49.
"`Where wages paid are commensurate with the services rendered there is no interruption in the prescriptive period. Abshire v. Cities Service Refining Corp., La.App., 1951, 50 So.2d 307; Mottet v. Libbey-Owens-Ford Glass Co., La.App., 1950, 49 So. 2d 38; Chauvin v. St. Mary Iron Work, La.App., 1951, 55 So.2d 617; Gradeur v. Louisiana Highway Comm., La.App., 1951, 52 So.2d 601.'
"Plaintiff forcefully argues that since the evidence shows he cannot perform all and every duty formerly performed by him and since his employer admits that he is being paid $1.20 per hour for services worth only 85¢ to 90¢ per hour, the wages paid him since his injury are necessarily in lieu of compensation, and therefore, the present case comes under the rule laid down in Carpenter v. E. I. Dupont de Nemours [& Co., La.App.], 194 So. 99, and Stiles v. International Paper Co. [La.App.], 39 So.2d 635. We do not subscribe to the theory that in every case in which the employee is assigned to lighter duties after an accident wages paid him for performing such light duties must necessarily be construed as being paid in lieu of compensation.
"Heretofore, plaintiff may have successfully contended that payment of wages subsequent to injury ipso facto interrupted running of prescription but this line of jurisprudence has been abandoned as appears from the following language taken from the recent case of Cradeur v. Louisiana Highway Comm., La.App., 52 So.2d 601 [,603]:
"`There was a period in our jurisprudence when plaintiff might have successfully argued that his continued employment under the present facts would have had the effect of interrupting prescription on his claim. In Carpenter v. E. I. Dupont de Nemours & Co., La.App. 1940, 194 So. 99, 101, this court said: "* * * it is our confirmed opinion that when, with knowledge of the employee's disabling injury, the employer continues to pay him his usual wages, which is 35% more than the amount of compensation *92 he would have to pay, for performing lighter services than he was doing before, there results a situation in which the provision of the statute regarding the bar of peremption have been fully satisfied and as long as those payments continue prescription does not run. Otherwise, it is obvious that the employer could defeat every just claim for compensation for a period of more than fifty-two weeks by simply keeping the injured employee on the pay roll at a wage which is the equivalent of the amount of compensation he would be entitled to, or more, for a year and a day."
"`And on that same point this court said, by way of dictum, in Thornton v. E. I. Dupont De Nemours & Co., La. App.1943, 15 So.2d 543, 545: "* * * As long as plaintiff continued after his injury, to receive from his employer the same salary which he was paid before, as he alleges, there was no danger of his suit becoming prescribed."
"`Those two quotations constitute the most liberal parts of the decision from which they were taken and do not fully reflect what the cases actually held; they reflect, on the other hand, the equitable reasoning the court was indulging in and what the court then strongly felt was a reasonable and proper interpretation of Section 31 of the compensation act. The trend reflected there was stopped, however, when the Supreme Court reversed the Thornton case (on the plea of prematurity, which was the only question involved there) 1944, 207 La. 239, 21 So.2d 46, 52, at which time Chief Justice O'Neill commented on the Carpenter case and, after quoting, with other material, the same paragraph quoted above, said: "An employer could not defeat a just claim of an injured employee * * * by keeping his name on the payroll at regular wages for a period exceeding a year, because the employee could interrupt the running of prescription by bringing suit on his claim for workmen's compensation at any time."
"`Since then our jurisprudence on prescription has generally been to the effect that if an injured employee continues to work for the same employer, whether he does light duty or otherwise, if his pay is commensurate with his services the payment of wages does not interrupt the running of prescription. See Arnold v. Solvay Process Co., 207 La. 8, 20 So.2d 407; Michel v. Maryland Casualty Co., La.App., 33 So.2d 144; D'Antoni v. Employers Liability Assurance Corp., 213 La. 67, 34 So.2d 378; Walker v. Mansfield Hardwood Lumber Co., La.App., 35 So.2d 610; Mottet v. Libbey-Owens-Ford Glass Co., La.App., 49 So.2d 38; Abshire v. Cities Service Refining Corp., La.App., 50 So.2d 307.'
"We believe that a review of the pertinent decisions establishes the principle that payment of wages subsequent to injury will be construed as gratuities or payments in lieu of or in the nature of compensation, and therefore, have the effect of interrupting prescription under one of the following circumstances:
"1. Where it is shown or admitted that the wages are in lieu of or in the nature of compensation.
"2. Where wages are paid by the employer to lull the employee into a sense of security with a fraudulent intention of dismissing the employee after prescription has accrued.
"3. Where it can be reasonably inferred from all the facts and circumstances of the case that the parties intended the wages paid to be in lieu of or in the nature of compensation.
"Whether wages paid are actually earned or amount to gratuities in lieu of or in the nature of compensation must be determined in the light of the facts and circumstances of each particular case.

*93 "Applying the foregoing principles to the instant case, it appears that the wages paid plaintiff since his injury are not in the form of gratuities and cannot be considered in lieu of or in the nature of compensation. Plaintiff's own testimony is to the effect that he feels that he is earning part of his wages and that he is performing all of his former duties except those that require climbing and stooping. The evidence of Mr. Wilkinson, plaintiff's immediate superior, shows that plaintiff is earning 85¢ to 90¢ of his present $1.20 per hour wage and that raises given plaintiff subsequent to his injury were motivated solely by plaintiff's long and faithful services to the corporation and to maintain plaintiff on an income scale equal to his brothers.
"Considering the facts and circumstances of this case, we can find no justification for holding that the wages received by plaintiff subsequent to his injury had the effect of interrupting prescription on plaintiff's claim. The record convinces us that the wages paid by plaintiff's employer are not in the form of gratuities but rather are commensurate with services rendered, and therefore, cannot be considered payments in lieu of or in the nature of compensation. The general trend of Mr. Wilkinson's testimony was obviously favorable to plaintiff, but not even Mr. Wilkinson would state that plaintiff's wages were gratuities, or payments in lieu of or in the nature of compensation.
"From the evidence we cannot reasonably infer that the parties intended the wages paid plaintiff to be in lieu of or in the nature of compensation." * * *
We do not question the factual findings of our learned brother below, although we differ in the legal conclusions to be drawn from them. The District Court relied to great extent upon the conclusions reached by our brethren of the Second Circuit in Wallace v. Remington Rand, Inc., 76 So. 2d 87, with which conclusions we respectfully differ.
In the present case, we find that the employee was admittedly disabled due to industrial injury from performing his climbing or heavier duties. When he returned to his employment, due to this fact mutually known to him and to his employer, he was assigned only the non-climbing or lighter duties; nevertheless, he was paid the full wages of a fully-physically-qualified welder and machinist, although able to perform and performing only partially the duties thereof. (At times when there was available no welding work he was capable to perform, he was assigned to the much less skilled and less remunerative duties of a water tender, although still drawing the higher full wages of a fully qualified welder and machinist.)
Under these circumstances, we do not believe as a matter of law that the employee, Scalise, was fully earning his wages. Both he and his employer state the wages paid were not commensurate with services rendered. Further, it is not what they contend the man is worth that is determinative herein, but it is a comparison of the nature of the duties and the pay prior to and subsequent to the accident that determines whether the employee is receiving wages or payments in lieu of compensation. When the wages paid a disabled employee are more than commensurate with the services rendered and the employee is not actually earning all of his pay, then there is a reasonable inference that the wages paid were intended as payments in lieu of or in the nature of compensation. Under the facts herein, we find that there was a relationship from which it can be implied that the wage payments made were in lieu of compensation, so as to interrupt the accrual of prescription. It constituted a recognition by the employer of the employee's industrial disability, and an implied agreement to pay and to receive these wage payments in lieu of compensation.
We have reached this result after a thorough review of the jurisprudence, which jurisprudence we admit is not clear.
*94 Originally, in Ulmer v. E. I. DuPont de Nemours & Co., La.App., 1 Cir., 190 So. 175, this court sustained a plea of prematurity and held that payment of full wages for performance of lighter duties constitutes a payment in lieu or satisfaction of compensation for purposes of the compensation act; therefore a suit filed while such wages were still being paid was premature. We likewise held in Carpenter v. E. I. DuPont de Nemours & Co., La.App. 1 Cir., 194 So. 99, that a plea of prescription should be overruled where the petitioner alleged the payment (until two months before suit, filed almost two years after the accident) of full wages for the performance of lighter duties following a disabling accident by a disabled employee, since such wages constituted payments in lieu of compensation interrupting prescription.
Most of the confusion arises from the case of Thornton v. E. I. DuPont de Nemours & Co., 207 La. 239, 21 So.2d 47, wherein as quoted above by the District Court herein, our Supreme Court held that the payment of wages did not constitute the payment of compensation. The opinion specifically approved the Carpenter and the Ulmer cases, and also Carlino v. United States Fidelity & Guaranty Co., 196 La. 400, 199 So. 228, discussed below. But the Thornton decision seems contrary to the principles announced in those cases since in all those cases the payment of full wages for lighter duties was held to be payment of compensation for purposes of the compensation act; while the Thornton case reversed the District Court and Court of Appeals, which had sustained a plea of prematurity on the allegation of the petition that the employee was drawing full wages but performing only light duties.
However, viewed in its narrowest sense, the Thornton case simply held that an employee is entitled to file suit to have the employer's future compensation liability determined, when the employee has continued drawing wages which may (or may not) be considered as compensation. It is to be noted that the opinion specifically approved of the Carlino case where the employer continued "as a matter of generosity and consideration for Carlino's long term of service" to pay Carlino full wages for lighter duties, and further noted that plaintiff therein "was entitled to a judgment determining and fixing a rate of compensation to which he was entitled for the loss of his wage earning-capacity * * * but * * * the compensation should not be collectible for the period during which the plaintiff had received or would continue to receive his wages from the employer", 21 So.2d 50.
When the Supreme Court stated the payment of full wages by the employer is "virtually a denial that the employee is entitled to compensation for the loss of wage-earning capacity; and the employee's continuing to receive the wages after the accident has happened might be construed as an admission that he has not suffered any loss of wage-earning capacity", 21 So.2d 49 (Italics ours); it did not intend a statement of law, but a statement of what might be held if Thornton waited to file suit until some later date. Thus, the Thornton case simply held that an exception of prematurity will not be sustained on a simple allegation that a plaintiff is being paid full wages for the performance of lighter duties; for the payment of wages generally indicates that compensation is not being paidalthough under the facts of each case, it may be determined that the wages in question are intended or have the legal effect of constituting payments in lieu of compensation. When the employer does not admit that such wage payments are in lieu of compensation, the employee is entitled to seek a judgment fixing the employer's compensation liability. Interpreted in this matter, the Thornton case can be reconciled with the Carpenter, Ulmer, and Carlino cases, all specifically approved by it.
Similarly, in D'Antoni v. Employers' Liability Assurance Corporation, 213 La. 67, 34 So.2d 378, our Supreme Court reversed an exception of prematurity which had been sustained by the lower courts, with the following definite statement, 34 So.2d 380:
"The jurisprudence relative to the prosecution by injured employees of claims for further compensation, where *95 they have returned to the service of their former employer in the same or a different capacity, has been settled by this Court in Carlino v. United States Fidelity and Guaranty Co., 196 La. 400, 199 So. 228, and Thornton v. E. I. Du-Pont De Nemours & Co., 207 La. 239, 21 So.2d 46. If the employee is actually earning the wages paid him, his suit cannot be dismissed on a plea of prematurity forasmuch as he is not receiving compensation. Such is the case here according to Atkins' testimony. Conversely, if it is shown on the trial of the plea that the wages being paid the employee are in reality a gratuity and not for the performance of work, then the action will be dismissed as prematurefor, in such instance, the payment of the wage is the equivalent to the payment of compensation." (Italics ours.)
This broad language is somewhat limited by the context. The employee's claim for compensation was met by a plea of prematurity, but the employer testified the employee was actually earning the wages and had refused to stipulate that such wages constituted payments in lieu of compensation for purposes of interrupting prescription. The employee then filed suit just before the year expired. The actual holding of the case was that an exception of prematurity did not lie, even though the employee was receiving full wages for the performance of lighter duties, when the employer refused to make any commitment as to whether the wages paid were compensation or wages. It can readily be seen that had the employee continued to accept wage payments after the employer specifically refused to agree that such wage payments were in lieu of compensation, his continued acceptance of such wages would tend to support the presumption that wages paid are for services rendered, and not for compensation benefits.
The opinion and the language quoted above hold that for purposes of deciding a plea of prematurity, the payment of full wages for lighter work will not be treated as payment in lieu of compensation if the employer contends such wages are actually earned and does not admit them to be payments interrupting prescription; for upon the employer's in effect denial of liability, the employee is entitled "`to have determined immediately * * * the extent of his disability and his right to further compensation'", 34 So.2d 381. It is to be noted that the opinion cites Carlino v. United States Fidelity & Guaranty Co., 196 La. 400, 199 So. 228, with approval, and does not negate the proposition that full wages paid for performance of lighter duties may be treated as "in reality a gratuity and not for the performance of work", that is, as compensation.
These two cases approached the legal problems created by the receipt of wages by the retained employee solely from the point of view of an exception of prematurity. Some of the confusion in the jurisprudence has arisen because observations valid in the context of the particular problem posed in these cases, have been applied out of context to the other broad problems which arise when a manifestly disabled employee is retained by his employer at full wages for the performance of some or all of the previous duties of his employment.[1]
As noted in Professor Wex Malone's authoritative treatise, Louisiana Workmen's Compensation Law and Practice, Chapter 19 "The Retained Employee", these three general groups of problems relate to:
I. Prematurity:is the suit of a disabled employee, retained and paid wages by his employer, premature because the employer is satisfying his compensation liability by the payment of wages?
II. Compensation Credit:What credit shall the employer receive against his compensation liability for the wages paid by him to a disabled employee?
*96 III. Prescription:is the suit of a disabled employee prescribed when filed more than one year past the accident or last payment denoted by name as "compensation", or will the payment of wages to this disabled employee interrupt prescription?
I. Prematurity.
As noted above in the Thornton and D'Antoni cases our Supreme Court held that an employee's suit is not premature when he is drawing full wages for the performance of lighter work, even though our Supreme Court approved other jurisprudence that such wages could constitute payments in lieu of compensation.
II. Compensation Credit:
Initially, in Hulo v. City of New Iberia, 153 La. 284, 95 So. 719, the Court attempted to divide the wages paid into "earned" and "unearned" portions, and to allow the employer credit as advance compensation of the total amount of "unearned" wages paid. But in Carlino v. United States Fidelity & Guaranty Co., 196 La. 400, 199 So. 228, our Supreme Court held that for each week of wages paid which were equal to or greater than the amount of weekly workmen's compensation due, the employer extinguished by one week his liability for compensation, no matter what the amount of wages paid. No effort was made to distinguish between the earned and unearned portion of the wages. Finding that the full wages paid for light work were paid as a gratuity and in lieu of compensation, the Supreme Court nevertheless held that an employee was entitled to judgment recognizing his disability and the compensation liability of the employer, but also recognizing that the employer was entitled to credit for one week of compensation due for each week that wages were paid equal to or greater than the compensation rate.
As Professor Malone states, in considering the Thornton case in connection with the Carlino case, "the implications of the above line of reasoning are puzzling", Malone, above cited, page 521; but he continues:
"The explanation of the Court's position in the Carlino case and the Thornton case probably rests on expediency. The court is determined that the employer shall not be obliged to pay simultaneously both compensation and wages. At the same time the court is unwilling to extend the strict provisions on prematurity so as to deprive the injured worker of his privilege to litigate the extent of his injury even though he is being retained by his employer at a satisfactory wage. The Act is so framed that both these two desirable objectives cannot be consistently achieved."
In everyone of the credit-for-compensation cases which subsequently arose (with one very recent exception, discussed below), the courts ruled so as to allow an employer compensation credit in this manner for full wages paid a disabled employee able to perform only a part of his duties, and so as not to require an employer to pay simultaneously both wages and compensation; Goodman v. Hillyer, Deutsch, Edwards, Inc., La.App., 49 So.2d 60; Perkins v. Brown Paper Mill Co., La.App., 43 So.2d 501; Daigle v. Higgins Industries, La.App. Orleans, 29 So.2d 374; Gautreau v. Maryland Casualty Co., La.App. 1 Cir., 28 So.2d 96; Fisher v. Standard Accident Insurance Co., La.App. 1 Cir., 28 So.2d 59; Annen v. Standard Oil of New Jersey, La.App. 1 Cir., 28 So.2d 46; Matin v. State, La.App. 1 Cir., 25 So.2d 251; Vega v. Higgins Industries, Inc., La.App., 23 So.2d 661; Lee v. International Paper Co., La.App., 16 So. 2d 679.
It can be noted in these cases, and is specifically discussed in the Goodman and Daigle cases, that the employer receives this compensation credit whether the services rendered are worth the wages paid or not.
III. Prescription.
The Carpenter case decided by this Court that the payment of full wages for lighter work were payments in lieu of compensation and interrupted prescription. While dicta in the Thornton case seemed to limit it to the situation where the payment of wages was intended to lull the injured employee into a sense of security, careful *97 reading of the comments therein also leads to the conclusion that the Supreme Court approved of this Court's determining in Carpenter "as a matter of fact that the employer's continuing to pay the employee his wages, for doing lighter work after the accident had happened, should be treated as the payment of compensation", and that such wage payments were "regarded as the payment of compensation in a disguised form", 21 So.2d 52.
In any case, in every single one of the credit-for-compensation cases above cited, it is either implicitly assumed or explicitly stated that the wage payments for which the employer received compensation credit, also interrupted prescription insofar as the employee is concerned.
Similarly, in the few prescription cases that arose, the same assumption is made that the payment of full wages for lighter work interrupts prescription, and this was specifically held by the Second Circuit in overruling a plea of prescription based against allegations to this effect in a petition, Stiles v. International Paper Co., La. App., 39 So.2d 635.[2]
For instance, in Chauvin v. St. Mary Iron Works, La.App. 1 Cir., 55 So.2d 617, this court sustained a plea of prescription, but specifically stated that the employee performed the same hard work after the accident as before. But in referring to the doctrine of the Carpenter case, we stated at 55 So.2d 619:
"Under the jurisprudence, had he followed their instructions and notified the employer and performed light work, the wages which he received would have been considered as in lieu of or in the nature of workmen's compensation and prescription would have been interrupted."
The basic reason for the rule enunciated is that the payment of full wages for the performance of lighter work constitutes a recognition by the parties that the employee has a just claim for compensation, see Stiles v. International Paper Co., La. App., 39 So.2d 635, at page 637. An implicit reason for the rule is the social wisdom of encouraging the employer to retain and to rehabilitate his injured employees, thus furthering the ends of the Act to compensate for loss of earning power due to industrial accident. If the employee is arbitrarily required to file suit before the year is out, his continued employment and rehabilitation is jeopardized. On the other hand, the humanitarian employer is rewarded by receiving credit against his compensation liability, even if the wages are also partially earned.
In Perkins v. American Employers Insurance Co., La.App. 1 Cir., 53 So.2d 462, Cradeur v. Louisiana Highway Commission, La.App. 1 Cir., 52 So.2d 601, and Abshire v. Cities Service Refining Corporation, La.App. 1 Cir., 50 So.2d 307, this Court sustained pleas of prescription to suits for compensation filed by retained employees more than a year after the accident or last compensation payment. In each case, this Court found that the plaintiff received his regular wages but performed his usual pre-accident duties that is, that there was not such a transfer to lighter duties at full pay as to constitute a mutual recognition of the employee's industrial disability and an implied agreement that wages were payments in lieu of compensation. These cases also contained dicta indicating that the Carpenter case holding had possibly been overruled by later pronouncements of the Supreme Court, and upon which the District Court herein relied to some extent in reaching its decision. As indicated above, however, we *98 have reached a contrary conclusion on thorough reexamination of the entire jurisprudence when faced with the actual necessity of deciding the question before us.
The able District Court also properly relied to great extent upon the decision of our brethren of the Second Circuit, Wallace v. Remington Rand, Inc., La. App., 76 So.2d 87 (Writ. Cert. granted Feb. 14, 1955, now pending in Supreme Court), where it was held that there must be a specific or implied agreement that full wages paid for lighter work constitute payments in lieu of compensation, in order to interrupt prescription. The mere fact that the employer transfers the employee to lighter duties because of disability resulting from industrial accident, was held not to constitute such an implied agreement. With great respect for our brethren of the Second Circuit, for the reasons more fully set forth above, we do not agree with the conclusions reached.
It should be noted that in the recent Myers v. Jahncke Service, Inc., La.App., 76 So.2d 436, our brothers of the Orleans Court reached the conclusion that no credit should be given an employer for weekly wages earned by an employee at lighter but different duties (as pusher, instead of as ship-fitter), based on Mottet v. Libbey-Owens-Ford Co., 220 La. 653, 57 So.2d 218, 220, where it was held that "wages paid the plaintiff as night watchman were earned in a different kind of work * * * and cannot be considered in the nature of compensation" (Italics ours). Similarly, in Barnes v. Ed. Taussig, Inc., La.App. 1 Cir., 78 So.2d 418, we held an employee's claim was prescribed where he is transferred to a different type of employment, and the wages were actually earned and commensurate with the services rendered by him; and where he was not misled or lulled into a false sense of security, because he had consulted his own lawyer before the year expired.
In the present case, we find it unquestioned and admitted that the employee received full wages for performing lighter or non-climbing duties, to which duties he was restricted by disability incurred in his employment. The payment of these full wages for partial performance of former duties constituted a recognition by the employer of his employee's disability due to accidental injury sustained in the course of his employment. As such, the payment of these wages interrupted the accrual of prescription. Likewise, the employer and his insurer are entitled to receive credit to the extent that, for every week in which the wages paid the employee were or are equal to or greater than the amount of weekly compensation due, then each such week's wages shall satisfy one weekly compensation payment.
Able counsel for defendant has filed an answer to the appeal, urging, first, that the plea of prescription be sustained; and in the alternative, that if the plea of prescription is overruled, then that a plea of prematurity be sustained.
This alternative plea must also be overruled. The allegations show that no compensation was paid from April 20, 1953, through August 21, 1953. Further, in view of the defendant insurer's denial of any liability at all in the premises, the plaintiff is entitled to have the defendant's liability and compensation fixed; D'Antoni v. Employers' Liability Assurance Corp., 213 La. 67, 34 So.2d 378; Thornton v. E. I. DuPont De Nemours & Co., 207 La. 239, 21 So.2d 47, see also Washington v. Independent Ice & Cold Storage Co., 211 La. 690, 30 So. 2d 758; although in these proceedings defendants will receive credit for wages paid by the employer which equal or exceed the statutory compensation rate; Carlino v. United States Fidelity & Guaranty Co., 196 La. 400, 199 So. 228.
For the above and foregoing reasons, the judgment of the District Court sustaining the plea of prescription herein is reversed; said plea of prescription is overruled, and the alternative plea of prematurity is likewise overruled; and this case is remanded for further proceedings and determination not inconsistent with the views expressed herein.
Reversed and remanded.
NOTES
[1] Cf. for somewhat related problems arising when an employee is retained in the employment when the disability is not manifest; Johnson v. Cabot Carbon Co., Inc., 227 La. 941, 81 So.2d 2; Mottet v. Libbey-Owens-Ford Glass Co., 220 La. 653, 57 So.2d 218.
[2] Walker v. Mansfield Hardwood Lumber Co., La.App., 35 So.2d 610, was technically a prescription case, but it specifically distinguished itself from the Carpenter case in that the plaintiff was discharged 5 months before the year was up, and could have filed suit during that interval. Although this may not be a valid distinction, this case also accepted the general premise that if the employee filed suit after the year when paid consistently to that time full wages for light work, then the suit would not be prescribed.