TATE, Judge
(dissenting).
The writer respectfully dissents. Here, an admittedly crippled employee, in need of major surgery, was retained by his employer at full wages, but the employee was transferred to lighter duties. During the entire period of his retained employment, he was treated and examined regularly at least once each month by his employer’s physician, and he was paid full wages for the work-time lost for this medical attention, although the employee performed absolutely no services for these wages. The employee’s continued severe disability was known both to the employee and to the employer, who received medical reports to this effect during the entire time of the retained employment.
Although the employee’s disability during the time of the retained employment was not conjectural, but instead was the reason why the employee was transferred at the same wages to lighter duties, the majority finds that the claimant’s claim for compensation had prescribed when he was finally *799 discharged, because he did not file suit within a year of the time he returned to work- — -even though his employer had recognized and was affording medical treatment for his work-caused disability during this time and had in fact transferred him to lighter duties at full pay by reason of it, and was even paying him unearned wages for work-time lost each month while the employee received medical treatment at the employer’s instance for his work-caused disability.
Under the circumstances shown, the law implies an agreement between the employer and the retained employee that the continued payment of full wages constitutes payments in lieu of compensation. See discussion below. The conscientious majority’s error, in my opinion, arises from a failure to consider whether the virtually undisputed evidence, as a whole, proved such a law-implied agreement. Instead of determining whether the wages could or could not be considered “fully earned” in the light of such a law-implied agreement to the contrary, the majority erroneously concluded that prescription was not interrupted because, from a labor-market point of view, the same wages — the very minimum by federal law that could be paid for any work whatsoever done, no matter how insignificant — would have been paid to any other employee putting time in at the same light duties, whether crippled or not. As I hope to show, this literal and mechanical test is incorrect as a matter of law.
The retention of an injured employee has in general raised several different issues relating to workmen’s compensation liability, such as those, respectively, of prescription, prematurity, and credit. Malone, Louisiana Workmen’s Compensation Law and Practice (1951), Chapter 19 (also see 1964 pocket part). Because the closely related issues nevertheless differ somewhat and involve somewhat different policy-considerations in the light of the fundamental aims of the compensation statute, sometimes expressions in the jurisprudence relating to one type of legal issue produce confusion when applied literally to the solution of another type of issue relating to the retained employee. Comment, “Problems of the Retained Employee in Louisiana Workmen’s Compensation Law”, 20 La.L:Rev. 369 (1960).
Generally speaking, with regard to prescription problems of the retained employee, there have been two principal type-situations.
(1) Where the retained employee is admittedly disabled; in which case a transfer at full pay to lighter duties is regarded as a mutual recognition by the employer and the employee of the employee’s work-caused disability, together with an implied agreement to treat the wages paid as “unearned”, with the consequent effect that these wages both interrupt prescription and constitute a credit against the employer’s compensation liability. Rimbolt v. City of New Orleans, La.App. 4 Cir., 150 So.2d 871, certiorari denied; Griffin v. Liberty Mutual Insurance Co., La.App. 2 Cir., 131 So.2d 153; Walters v. General Accident & Fire Assur. Corp., La.App. 1 Cir., 119 So.2d 550, certiorari denied; Scalise v. Liberty Mutual Insurance Co., La.App. 1 Cir., 84 So.2d 88. Cf. also: Thornton v. E. I. DuPont De Nemours & Co., 207 La. 239, 21 So.2d 46; Carlino v. U. S. F. & F. Co., 196 La. 400, 199 So. 228.
(2) Where the employee’s total disability does not become manifest until some time after he continued in his employment, or where the disability is conjectural or disputed during the time of retained employment; in which cases, generally speaking, prescription does not commence to accrue against the employee’s claim until the injury develops into disability, forcing the employee to cease work, and in which cases the employer is not entitled to credit against compensation liability for wages that are fully earned. Madison v. American Sugar Refining Co., 243 La. 408, 144 So.2d 377; Lindsey v. Continental Casualty Co., 242 La. 694, 138 So.2d 543; Wallace v. Remington Rand, Inc., 229 La. 651, 86 So.2d *800 522; Gary v. Fidelity & Casualty Co., La. App. 3 Cir., 158 So.2d 866; Bigham v. Swift & Co., 229 La. 341, 86 So.2d 59; Johnson v. Cabot Carbon Co., 227 La. 941, 81 So.2d 2; Mottet v. Libbey-Owens-Ford Glass Co., 220 La. 653, 57 So.2d 218.
In the latter (or second) type of situation (which was involved in the Madison case, cited above, relied upon by the majority), it is unnecessary to determine whether the continued payment of wages interrupts prescription. The sole issue there is whether the employer is or is not entitled to credit against compensation liability for wages paid during the period of undeveloped or conjectural disability, which issue is resolved by a determination of whether or not the employer has received full value for the wages paid to the employee before the disability became manifest. If the employer did receive full value, he is not entitled to credit against compensation liability.
However, in the former (or first) type of case (which is what we are here concerned with), the continued payment of wages itself is the basis of the interruption of prescription. The issue then is not simply whether the employer received full value for the wages thus paid. Whether or not the wages are to be regarded as “fully earned” for the purposes of interrupting prescription, must then be evaluated, in the light of all the circumstances, to determine whether or not they are paid pursuant to a law-implied agreement for the employer to pay and for the employee to receive such full wages for lesser work, in lieu of compensation benefits due the employee for a mutually recognized disability of the employee. If full wages for lesser work are paid pursuant to such a law-implied agreement, they are not “fully earned”, whether or not, for instance, federal law might require the payment of such minimum-rate wages.
At this point we must note one of the basic reasons why the courts for several decades have considered full wage payments to an admittedly disabled employee as interrupting prescription against the injured worker’s compensation claim, and why the courts have held that the law then implies mutual recognition by each full wage payment of the employee’s disability and of the employer’s compensation liability. As stated in an early leading case, Carpenter v. E. I. DuPont, La.App. 1 Cir., 194 So. 99, 101 (approved by the Supreme Court in Thornton, cited above, at 21 So.2d 52) :
“ * * * it is our confirmed opinion that when, with knowledge of the employee’s disabling injury, the employer continues to pay him his usual wages, which is 35% more than the amount of compensation he would have to pay, for performing lighter services than he was doing before, there results a situation in which the provisions of the statute regarding the bar of peremption have been fully satisfied and as long as those payments continue prescription does not run. Otherwise, it is obvious that the employer could defeat every just claim for compensation for a period of more than fifty-two weeks by simply keeping the injured employee on the payroll at a wage which is the equivalent of the amount of compensation he would be entitled to, or more, for a year and a day.”
In the present instance, let us assume (and there is no reason to disbelieve so) that the present employer retained the crippled employee at full wages for three years strictly for humanitarian reasons. Nevertheless, unintended or not, the payment of these minimum wages during three years of retained employment has resulted, if the majority is correct: (1) in the employee not filing a suit to protect his compensation rights within a year of the last payment denoted by name as “workmen’s compensation”; and (2) in the employee’s consequent loss by prescription of his rights to almost five years’ additional compensation for total disability, as well as to the necessary major surgery necessary to alleviate his condition.
*801 This result has obtained, although from the beginning to the end of the retained employment the employer acknowledged the continued disability by the payment of full wages for lesser work and by the payment of unearned wages for the work-time spent away from the work-premises for medical treatment. This result obtains, the majority says, because of the payment of the .minimum wages permitted by federal law, which the majority considers as “fully earned” because any other employee who worked for the same amount of hours at the same work (or any other work, however insignificant) would have been paid at the same rate. Thus, the employer, for the minimum wages it was required by law to pay for the work done by the crippled employee, has received not only the services of the employee but also the extinguishment of the employee’s otherwise undoubtedly valid claim for five more years of workmen’s compensation benefits
Whether intended or not, the continued payment of full wages for lighter work— including the payment of unearned wages for time spent in medical treatment — had the effect here of inducing a false sense of security in the crippled employee that his employer recognized its legal responsibility for the work-caused crippling. The obviously crippled employee, still undergoing medical treatment up until the month of his discharge, in need of major corrective back-surgery, is thus now without his compensation remedy for subsistence and medical care; and the industry in which the work-disability occurred has escaped its legal responsibility to bear the cost thereof.
A less scrupulous employer may deliberately transfer a crippled employee to lighter duties and pay minimum wages for them; for the lighter or less significant the duties, the less will be the wages necessary to be “fully earned” by them, if the majority’s view is correct. Such an unscrupulous employer by design may thus cause an employee to forego his compensation remedy in reliance upon his employer’s apparent acknowledgment both of the employee’s undoubted disability and of the employer’s legal responsibility to pay him subsistence during the period of his disability. If the majority’s test stands, that minimum wages do not interrupt prescription because they are “fully earned” from a labor-market point of view, then the less scrupulous employer may satisfy his 400 weeks’ compensation liability by payment of minimum wages for 52 weeks and a day. He may thus accomplish deliberately the evasion of his compensation liability which the majority has permitted the present employer. The present employer’s presumed innocence of bad intentions should not vary the result of the same objective course of conduct.
Perhaps, for the benefit of further review, more detailed discussion of the present facts and of the pertinent jurisprudence may be in order.
As previously noted, prescription may be interrupted by the continued payment of wages to an employee, disabled to the knowledge of both his employer and himself by a previous work-injury, who is nevertheless retained on the payroll and paid full wages although transferred to lighter duties. The basic legal reason for this result is that, under such circumstances, the transfer to lighter duties at full pay may “constitute a mutual recognition of the employee’s industrial disability and an implied agreement that wages were payments in lieu of compensation.” Scalise case, cited above, at 84 So.2d 97. See also Stiles v. International Paper Co., La.App. 2 Cir., 39 So.2d 635. Further, as the Supreme Court noted, the continued payment of wages lulling the insured employee into a false sense of security until after the expiration of the prescriptive period, can for that reason have the legal effect of preventing the running of prescription. Thornton case, above-cited, at 21 So.2d 52.
In Madison, above-cited, the Supreme Court noted that whether wages paid after the injury are “actually earned” instead of being paid in lieu of compensation “is *802 determined by the facts and circumstances of a particular case.” 144 So.2d 380. Also, in determining whether or not wages are fully earned so as to interrupt prescription or not, “[I]t is not what they [the employer and the employee] contend the man is worth that is determinative herein, but it is a comparison of the nature of the duties and the pay prior to and subsequent to the accident that determines whether the employee is receiving wages or payments in lieu of compensation. When the wages paid a disabled employee are more than commensurate with the services rendered and the employee is not actually earning all of his pay, then there is a reasonable inference that the wages paid were intended as payments in lieu of or in the nature of compensation.” Scalise, cited above, at 84 So.2d 88.
In the present case, the same minimum wages were paid to the injured employee both before and after the disabling accident. The essential question is whether, from this continued payment of wages, the law implies a mutual agreement to pay and receive the full wages for lesser duties as a substitute for workmen’s compensation benefits due, independent of any express agreement of the parties to this effect.
In the comparison of the duties performed for the same wages before and after the accident, the evidence shows that after the accident the claimant was paid the same wages as before the accident for the lesser services performed by him as cook, which were lighter and included more intervals of non-work during the day.
Also, the plaintiff was transferred to the lighter duties of cook (previously performed by a one-legged man), even though the claimant “was not much of a cook” at the time of the transfer, but “just decided to try it.” Tr. 56. The supervisory personnel testified that the claimant was transferred to the cooking job, not because the duties were lighter, but because “it would fit him better.” Tr. 44. In view of the claimant’s lack of qualifications or experience as cook, it is obvious that this unskilled laborer was transferred to these lighter duties since they were more suitable to him than the heavier duties chiefly because of his work-caused disability to perform the heavier labor, a disability undoubtedly known to the employer through the periodic medical reports which indicated substantial back disability requiring major corrective back-surgery.
The services performed by the claimant were thus not commensurate with the wages received for them, considering that he had prior to his disability received the same wages for the performance of the heavier and more constant duties of a laborer. The claimant, as an unskilled cook, thus did not fully earn the same wages (at the same rate as for an experienced cook) paid him as for his prior heavier duties, within the meaning of the jurisprudence concerning the interruption of prescription through the continued payment of wages.
In my opinion, the error in contending that the plaintiff’s wages after his return to work were “fully earned”, arises essentially from a failure to compare the services performed for the same wages by the plaintiff before and after the accident. This is an essential consideration in determining whether prescription is interrupted by reason of a law-implied mutual recognition of the employee’s disability with payment and receipt of wages to be in lieu of compensation due therefor. Under the circumstances, it is not determinative that such minimum wages might be considered “fully earned” because the employer could not by law pay lesser wages for the same services.
In Pohl v. American Bridge Division, La.App.Orl., 109 So.2d 823, for instance, a disabled iron worker was paid full wages, 'although he was no longer able to perform his former climbing duties. The court came to the conclusion that the wages were not “fully earned” and therefore should be considered as the payment of work *803 men’s compensation, even though other non-climbing ground workers were paid at the same rate as the claimant for the same ground duties. The Supreme Court’s Lindsey decision, cited above, expressly notes that Pohl can be justified on the ground that under those circumstances the wages paid were not fully earned. 138 So.2d 546. The essential reason is that irrespective of whether the disabled workman’s services were worth on the labor market the amount paid, the wages paid for them were not, under the jurisprudence, “fully earned” for prescription purposes, by reason of the comparison of the duties performed for the same wages by the employee before the injury with those performed by him after it while disabled. See also Walters v. General Accident & Fire Assur. Corp., La.App. 1 Cir., 119 So.2d 550, certiorari denied, as well as Griffin v. Liberty Mutual Insurance Co., La.App. 2 Cir., 131 So.2d 153.
An additional circumstance to take into account is the continued payment of full wages to the plaintiff the weekly, then biweekly, then monthly, for one-to-two hour periods, during which the plaintiff performed no employment duties while he was released for medical treatment by reason of his work-caused disability. These continued during the entire period of the employee’s retained employment, up until the month of his discharge in 1964. Tr. 46. Apparently included in these regularly-paid unearned wages was compensation for two days spent in the hospital in September, 1962, for a myelogram corroborating definitely that the employee was in need of major surgery. Medical report of October 15, 1962.
The furnishing of the medical services themselves and payment therefor may not have interrupted prescription as constituting an admission of further liability in workmen’s compensation. LSA-R.S. 23 :- 1204, Kinder v. Lake Charles Terminal Dist., La.App. 1 Cir., 31 So.2d 498. However, the payment of full zvages for work-time spent away from the premises for medical examination constitutes, under the circumstances, the payment of unearned wage benefits arising out of the employee’s continued disability. That the employer may have followed a similar policy for other employees for non-work ailments is, of course, immaterial as to this disabled employee’s claim — for he was paid unearned wages as a result of a work-caused disability, and this under the jurisprudence interrupted prescription, whether or not the employer might have paid unearned wages as a gratuity to other employees for other reasons.
It seems to me that the employee could reasonably believe that it was not necessary for him to file suit to preserve his right to compensation, since his employer acknowledged its legal responsibility for the results of his disability, as instanced by the payment of unearned wages for work-time lost in medical examination away from the work premises, taken in conjunction with the mutual recognition of the employee’s disability (known to both because of the medical examinations and continual medical observation), resulting in the employee’s transfer to and performance of less arduous duties for the same full pay as for heavier and more constant work. Dean Larson notes that a theoretically correct rule, although difficult to administer, is that the payment of wages interrupts prescription “if the employee reasonably believed it was so intended.” 2 Larson, Workmen’s Compensation Law (1961), Section 78.43(c) at p. 273.
For the foregoing reasons, therefore, I respectfully dissent from the majority’s dismissal of this compensation suit upon a plea of prescription.
On Application for Rehearing.
En Banc. Rehearing denied.
TATE, J., dissents from denial of rehearing.
FRUGÉ, J., absent